FILED IN CHAMBERS
U.S.D.C. - Atlanta

MAR 0 8 2011

By: James N. Hatten, Clerk
    [signature]
    Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

AIRTRAN AIRWAYS, INC.,

    Plaintiff

v.

BRENDA ELEM, MARK D. LINK, and
LINK & SMITH, P.C.,

    Defendants

CIVIL ACTION NO.
1:10-CV-3673-ODE

ORDER

This claim for reimbursement under an employee welfare benefit plan subject to the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. §§ 1101 et seq., is before the Court on a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) filed by Defendants Mark D. Link and Link & Smith, P.C. (together, the "Link Defendants") [Doc. 5]. Plaintiff AirTran Airways, Inc. ("AirTran") filed a response in opposition to the motion to dismiss [Doc. 6], to which the Link Defendants replied [Doc. 10]. For the reasons set forth below, the Link Defendants' motion to dismiss [Doc. 5] is DENIED.

I.   Background

The facts that follow are set forth in AirTran's complaint. AirTran funded and sponsored an employee welfare benefit plan (the "Plan"), in which Defendant Brenda Elem ("Defendant Elem") participated [Doc. 1 at 2-3]. The Plan was administered by Aetna Life Insurance Company ("Aetna") on behalf of AirTran [Id. at 2]. On or about March 10, 2007, Defendant Elem was involved in a car

accident [Id. at 3]. The Plan provided $131,704.28 in medical benefits to Defendant Elem as a result of her injuries [Id.].

The Plan Documents, which set forth the terms by which the Plan benefits are provided, require Defendant Elem to reimburse the Plan for the amount of medical benefits provided on her behalf when Elem recovers these benefits from a third party source [Id. at 4]. The Plan Documents provide:

> **Subrogation**
> Immediately upon paying or providing any benefit under this Plan, the Plan shall be subrogated to (stand in the place of) all rights of recovery a Covered Person has against any Responsible Party with respect to any payment made by the Responsible Party to a Covered Person due to a Covered Person's injury . . . to the full extent of benefits provided or to be provided by the Plan.
>
> **Reimbursement**
> In addition, if a Covered Person receives any payment from any Responsible Party or Insurance Coverage as a result of an injury . . . the Plan has the right to recover from, and be reimbursed by, the Covered Person for all amounts this Plan has paid and will pay as a result of that injury . . . up to and including the full amount the Covered Person receives from any Responsible Party.
>
> **Constructive Trust**
> By accepting benefits . . . from the Plan, the Covered Person agrees that if he or she receives any payment from any Responsible Party as a result of injury . . . he or she will serve as a constructive trustee over the funds that constitute such payment . . . .
>
> **Lien Rights**
> Further, the Plan will automatically have a lien to the extent of benefits paid by the Plan for treatment of the . . . injury . . . for which the Responsible Party is liable. The lien shall be imposed upon any recovery whether by settlement, judgment, or otherwise related to treatment for any illness, injury, or condition for which the Plan paid benefits . . . .
>
> **First-Priority Claim**
> By accepting benefits . . . from the Plan, the Covered Person acknowledges that this Plan's recovery rights are a first priority claim against all Responsible Parties and are to be paid to the Plan before any other claim

> for the Covered Person's damages.  This Plan shall be entitled to full reimbursement on a first-dollar basis from any Responsible Party's payments, even if such payment to the Plan will result in a recovery to the Covered Person which is insufficient to make the Covered Person whole or to compensate the Covered Person in part or in whole for the damages sustained.  The Plan is not required to participate in or pay court costs or attorney fees to any attorney hired by the Covered Person to pursue the Covered Person's damage claim.
>
> ***Applicability to All Settlements and Judgments***
> The terms of this entire subrogation and right of recovery provision shall apply and the Plan is entitled to full recovery regardless of whether any liability for payment is admitted by any Responsible Party and regardless of whether the settlement or judgment received by the Covered Person identifies the medical benefits the Plan provided or purports to allocate any portion of such settlement or judgment to payment of expenses other than medical expenses.  The Plan is entitled to recover from any and all settlements or judgments, even those designated as pain and suffering, non-economic damages, and/or general damages only.

[Doc. 1-2, Ex. 2 at 2-3].

Following the car accident, Defendant Elem retained the Link Defendants as counsel and filed suit against the third party responsible for the accident, Miguel A. Rizoiglesias, in the State Court of Cherokee County, Georgia (the "civil action") [Doc. 1 at 5]. On July 13, 2007, counsel for Aetna (the Plan administrator) wrote a letter to Defendant Elem regarding the civil action against Mr. Rizoiglesias and advised Defendant Elem of the reimbursement and subrogation provisions contained in the Plan [Id. at 5-6; Doc. 1-3, Ex. 3 at 2]. The letter also requested that Defendant Elem contact Aetna "prior to settlement to obtain the final amount due" under the Plan's reimbursement provision [Doc. 1-3, Ex. 3 at 2].

On July 24, 2007, Aetna sent to Mr. Rizoiglesias' insurer, AIG Insurance d/b/a American International South Insurance Company

3

("AIG") a Notice of Lien/Claim Pertaining to Self-Funded, ERISA-Qualified Plan Which Preempts State Law ("Notice of Lien") [Doc. 1 at 6; Doc. 1-4, Ex. 4 at 2]. The Notice of Lien informed AIG of the Plan's subrogation and reimbursement rights against Defendant Elem and advised AIG of the Plan's automatic lien on any "judgment, settlement, or compromise" between the parties to the civil action [Doc. 1-4, Ex. 4 at 2].

On September 21, 2007, AIG received a demand letter in which Defendant Elem advised AIG of: (1) her willingness to settle her claim within AIG's policy limits of $25,000 within 30 days of the demand letter; (2) her claim that Aetna did not have an automatic lien on any settlement funds obtained in the civil action; and (3) her intention to pursue the full amount of her claim against Mr. Rizoiglesias if AIG declined to pay her $25,000 within 30 days [Doc. 1-5, Ex. 5 at 2].

On December 6, 2007, Aetna provided the Link Defendants with a Notice of Lien, which informed the Link Defendants of the Plan's subrogation and reimbursement rights, as well as the Plan's automatic lien against any "judgment, settlement, or compromise" between Defendant Elem and Mr. Rizoiglesias [Doc. 1-6, Ex. 6 at 2]. From that time until May 2010, Aetna continually requested from the Link Defendants status updates regarding the civil action, including the possibility of settlement [Doc. 1 at 8].

On May 11, 2010, Defendant Elem signed a Release, Indemnity Agreement, and Lien Affidavit (the "$25,000 Release"), which purported to settle the civil action for AIG's policy limit of $25,000 and to release Mr. Rizoiglesias and AIG "from any and all claims (known and unknown), demands, liabilities, obligations,

4

damages, costs, expenses, actions, causes of action or suits of any kind or nature whatsoever which have resulted or may in the future result from an incident which occurred on March 10, 2007 in Cobb County, Georgia" [Doc. 1-7, Ex. 7 at 2-3]. The Link Defendants informed Aetna via a letter dated May 18, 2010 of the $25,000 Release explaining, "After three years of waiting and countless continuances from the trial calendar," Defendant Elem "finally lost her patience" [Doc. 1-8, Ex. 8 at 2]. The letter stated that Defendant Elem "abandoned any hope" of recovering any amount above the $25,000 AIG policy limit and "resigned to settle her claim" [Id.]. The Link Defendants asked Aetna to accept $4,500 as a full and final settlement of the Plan's reimbursement claim [Id.].

Also on May 11, 2010, Defendant Elem executed a Release, Indemnity Agreement, and Lien Affidavit (the "$475,000 Release"), which purported to settle the civil action for $475,000 and release Mr. Rizoiglesias and AIG "from any and all claims (known and unknown), demands, liabilities, obligations, damages, costs, expenses, actions, causes of action or suits of any kind or nature whatsoever which have resulted or may in the future result from an incident which occurred on March 10, 2007 in Cobb County, Georgia" [Doc. 1-9, Ex. 9 at 2-3]. The $475,000 Release contained language largely identical to that of the $25,000 Release. It did not purport to release Mr. Rizoiglesias or AIG from any specific claims other than those asserted in the civil action and it made no mention of any bad faith claims Defendant Elem entertained against AIG (as the Link Defendants later asserted). The $475,000 Release was not mentioned in the Link Defendants' May 18, 2010

5

letter to Aetna, but enclosed with that letter was a copy of the $475,000 settlement check from AIG to Defendant Elem [Doc. 1 at 9; Doc. 1-10, Ex. 10 at 2].

On May 26, 2010, Aetna responded to the Link Defendants' May 18 letter, advising the Link Defendants that the Plan had an interest in all claims Defendant Elem brought against Mr. Rizoiglesias and AIG, including any claims settled pursuant to the $475,000 Release, which Defendants apparently described as a settlement for a claim of bad faith against AIG [Doc. 1-11, Ex. 11 at 2]. The letter stated that Aetna "most definitely had a right to know of all types of claims against all parties by Ms. Elem. Unfortunately, your error in forwarding us a copy of the $475,000.00 check brought this to light" [Id.]. Next, the letter stated:

> Please forward a copy of the Complaint filed in regard to the bad faith claim: Once again, at no time did you ever reveal to us that this was the source of the litigation and the reason that Ms. Elem decided to "abandon" her lawsuit . . . . Obviously the case settling for $500,000.00 was the reason to "abandon" the lawsuit.

[Id.]. Aetna requested that the Link Defendants retain the amount owed to Aetna in trust until all matters were resolved [Id. at 3].

On August 4, 2010, counsel for the Link Defendants and Defendant Elem responded to Aetna and stated that the $475,000 Release pertained to a bad faith claim against AIG and consequently did not fall within the ambit of the Plan's reimbursement and subrogation rights, which covered only payments received as a result of the same injury, illness, or condition for which the Plan paid medical expenses, namely, the car accident [Doc. 1-12, Ex. 12, at 2].

6

On November 10, 2010, AirTran filed the instant suit under ERISA, seeking to enforce the reimbursement provision of the Plan to recoup $131,704.28 in benefits paid under the Plan. To this date, neither the Link Defendants nor Defendant Elem have reimbursed the amount paid under the Plan [Doc. 1 at 11]. In its complaint, AirTran asserted claims for: (1) reimbursement and enforcement of Plan provisions against Defendant Elem (Count I); (2) equitable lien or constructive trust against all Defendants (Count II); (3) unjust enrichment under ERISA, 29 U.S.C. § 1132(a)(3), against all Defendants (Count III); and (4) attorneys' fees under ERISA, 29 U.S.C. § 1132(g)(1), against all Defendants (Count IV) [Id. at 11-16]. This motion to dismiss followed.

II. Discussion

    A.   Standard of Review

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the plaintiff's pleading. To survive a motion to dismiss for failure to state a claim, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007); see also Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). A plaintiff must "provide the grounds of his entitlement to relief . . . and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (internal quotation marks omitted). "Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true." Id. In considering a defendant's motion to dismiss,

a district court will accept as true all well-pleaded factual allegations and view them in the light most favorable to the plaintiff. See Am. United Life Ins. Co. v. Martinez, 480 F.3d 1043, 1057 (11th Cir. 2007).

B.  The Link Defendants' Motion to Dismiss

The Link Defendants assert that neither Count II (to impose an equitable lien or constructive trust) nor Count III (for unjust enrichment) states a viable claim against the Link Defendants and that Count IV (for attorneys' fees), as an ancillary count, also fails [Doc. 5-1 at 1-2].[1] Specifically, the Link Defendants argue that they cannot be liable for reimbursement of benefits paid under the Plan because they are not bound to the Plan through any applicable legal theory. For the following reasons, the Court disagrees.

1.  Count II: AirTran's Claim for Equitable Lien or Constructive Trust

The parties agree that ERISA Section 502(a)(3) determines which parties constitute appropriate defendants in this case. In accordance with Section 502(a)(3):

> A civil action may be brought by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (I) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan.

29 U.S.C. § 1132(a)(3). The Supreme Court of the United States has held that a non-fiduciary to a plan can be a proper defendant under Section 502(a)(3). Harris Trust & Sav. Bank v. Salomon Smith

---

[1] Count I is alleged only against Defendant Elem and is therefore irrelevant for consideration of the instant motion.

8

Barney Inc., 530 U.S. 238, 241, 245 (2000). Courts have subsequently extended the rationale of Harris Trust to non-fiduciaries who are also not parties in interest to the plan at issue, including attorneys retained by the plan beneficiary such as the Link Defendants in this case. See Longaberger Co. v. Kolt, 586 F.3d 459, 468 & n.7 (6th Cir. 2009) ("[T]here is no statutory barrier that prevents Kolt[, counsel for the plan fiduciary,] from being a defendant in a suit brought pursuant to § 502(a)(3) of ERISA, provided that the relief sought lies in equity."); Bombardier Aerospace Emp. Welfare Benefits Plan v. Ferrer, Poirot & Wansbrough, 354 F.3d 348, 353 (5th Cir. 2003) ("[T]he Supreme Court's reasoning in *Harris Trust* influences us to conclude today that § 502(a)(3) authorizes a cause of action against a non-fiduciary, non-'party in interest' attorney-at-law when he holds disputed settlement funds *on behalf of* a plan-participant client who is a traditional ERISA party.").

Under Harris Trust and its progeny, counsel for a plan beneficiary such as the Link Defendants are subject to suit under ERISA Section 502(a)(3) if: (1) funds rightfully belonging to a plan were wrongfully transferred; (2) the attorney had "actual or constructive knowledge" of the circumstances that rendered the transfer wrongful; and (3) the plan seeks appropriate equitable relief, such as restitution or imposition of a constructive trust. Harris Trust, 530 U.S. at 251, 253; Longaberger Co., 586 F.3d at 468. Here, AirTran alleges that: (1) settlement funds rightfully belonging to the Plan under its subrogation and reimbursement provisions were wrongfully transferred to the Link Defendants; (2) the Link Defendants had actual knowledge of the Plan's subrogation

and reimbursement rights (evidenced from two letters Aetna sent to the Link Defendants) and therefore knew that any transfer of settlement funds to the Link Defendants was wrongful; and (3) AirTran is entitled to equitable relief via imposition of a constructive trust or equitable lien or through a theory of unjust enrichment. Thus, each of the Section 502(a)(3) elements are seemingly satisfied and the Link Defendants are apparently susceptible to suit.

Despite this, the Link Defendants argue that they are not proper defendants under Section 502(a)(3) because they merely "innocently possess funds paid 'as compensation for legal services rendered to Defendant Elem'" [Doc. 5-1 at 8-9 (quoting Doc. 1 at 12-13)]. This argument is misguided for two reasons. First, to the extent that the Link Defendants assert that their receipt of the settlement funds was "innocent" because it occurred without knowledge of the Plan's subrogation and reimbursement rights, this stands in stark contrast to the record AirTran provided: via letters dated July 13 and December 6, 2007, counsel for Aetna expressly informed the Link Defendants of the subrogation and reimbursement rights set forth in the Plan Documents [Doc. 1-3, Ex. 3 at 2].

Further, to the extent that the Link Defendants argue that their receipt of the settlement funds was "innocent" because it occurred absent wrongdoing on their part, the Court notes that there is no requirement that the attorney himself engage in any wrongdoing. Indeed, all that is required is that the attorney had knowledge of the wrongful transfer. See Harris Trust, 530 U.S. at 251 ("Importantly, that a transferee was not 'the original

10

wrongdoer' does not insulate him from liability for restitution . . . . [T]he transferee must be demonstrated to have had actual or constructive knowledge of the circumstances that rendered the transaction unlawful."). The Link Defendants' "innocence" argument therefore lacks merit.

The Link Defendants argue, relatedly, that the funds in their possession were not wrongfully transferred as required by <u>Harris Trust</u> and its progeny [Doc. 5-1 at 8]. This too is belied by the record: the Plan Documents explicitly state:

> [I]f a Covered Person receives any payment from any Responsible Party or Insurance Coverage as a result of an injury . . . the Plan has the right to recover from, and be reimbursed by, the Covered Person for all amounts this Plan has paid and will pay as a result of that injury . . . up to and including the full amount the Covered Person receives from any Responsible Party.

[Doc. 1-2, Ex. 2 at 2]. The Plan Documents also provide:

> The Plan is not required to participate in or pay court costs or attorney fees to any attorney hired by the Covered Person to pursue the Covered Person's damage claim.

[<u>Id.</u>]. Together, these provisions demonstrate that the Plan enjoyed a right to recover funds Defendant Elem received as a result of her settlement with Mr. Rizoiglesias, provided they were received for her car accident injuries as asserted by AirTran, and that these settlement funds were not properly used to pay attorneys' fees to the Link Defendants. Thus, to the extent that the funds the Link Defendants received were for attorneys' fees, these funds were wrongfully transferred as such.

The Link Defendants have failed to establish the absence of a plausible claim for constructive trust or equitable lien. Accordingly, the motion to dismiss Count II is DENIED.

### 2. Count III: AirTran's Claim for Unjust Enrichment

The Link Defendants advance two reasons why AirTran has failed to state a plausible claim for unjust enrichment. First, the Link Defendants cite the same reasons proffered with respect to Count II [Doc. 5-1 at 9]. For the reasons set forth above, this first argument fails. Second, the Link Defendants argue that AirTran's complaint improperly "alleges that the defendants were unjustly enriched *apart from* the provisions of the plan requiring them to pay specific funds to the plaintiff" [Id. at 9-10]. This second argument also fails.

The Link Defendants cite the rule that where a plan "does not specify that . . . reimbursement be made out of any particular fund, as distinct from the beneficiary's general assets," and instead makes receipt of a settlement a "trigger for the general reimbursement obligation," the plan is unenforceable. Popowski v. Parrott, 461 F.3d 1367, 1374 (11th Cir. 2006). However, this rule does not mandate specific language to be used in a party's *allegations*; instead, it mandates language to be used in a plan itself.

Here, the Plan satisfies the rule set forth in Popowski because it requires reimbursement from "any payment from any Responsible Party," rather than from the general assets of the plan beneficiary [Doc. 1-2, Ex. 2 at 2]. See Sereboff v. Mid Atl. Med. Srvs., Inc., 547 U.S. 356, 364 (2006) (holding that terms of a plan created an equitable lien because the plan's terms "specifically identified a particular fund, distinct from the Sereboffs' general assets—'[a]ll recoveries from a third party (whether by lawsuit, settlement, or otherwise)'—and a particular

12

share of that fund to which Mid Atlantic was entitled—'that portion of the total recovery which is due [Mid Atlantic] for benefits paid'" (alteration in original) (quoting Barnes v. Alexander, 232 U.S. 117, 121 (1914))). Thus, AirTran has properly alleged that the Link Defendants were unjustly enriched by their receipt of wrongfully transferred and specifically identified Plan funds. The Link Defendants' motion to dismiss Count III is accordingly DENIED.

### 3. Count IV: AirTran's Claim for Attorneys' Fees

Because the Court finds that dismissal is improper as to the substantive claims alleged in Counts II and III, the Court also finds that AirTran's ancillary claim for attorneys' fees against the Link Defendants also survives the motion to dismiss. The Link Defendants' motion to dismiss Count IV is DENIED.

## III. Conclusion

For the reasons stated above, the Link Defendants' motion to dismiss [Doc. 5] is DENIED.

SO ORDERED, this __8__ day of March, 2011.

_____
ORINDA D. EVANS
UNITED STATES DISTRICT JUDGE